NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3101
_____

UNITED STATES OF AMERICA

v.

KEITH STEWART,
a/k/a Naughty,
a/k/a Nutty

KEITH STEWART,

Appellant

_____

No. 09-3102
_____

UNITED STATES OF AMERICA

v.

SHEDRICK CRAFTON,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 2-08-cr-00346-001 and 2-08-cr-00346-004)
District Judge:  Honorable Susan D. Wigenton

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 16, 2010

Before:  FISHER and COWEN, *Circuit Judges*, and PRATTER,[*] *District Judge*.

Filed: April 27, 2010

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Shedrick Crafton appeals his conviction and sentence, and co-defendant Keith Stewart appeals his conviction, for conspiring to distribute, and to possess with intent to distribute, one kilogram or more of heroin and five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A), and 846.  Stewart also appeals his conviction for possessing with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a) and (b)(1)(B).  For the reasons stated herein, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case.  Therefore, we will set forth only those facts necessary to our analysis.

From August 2006 until February 2008, Stewart and Crafton conspired to distribute multi-kilogram quantities of heroin and cocaine in and around Newark, New

---

[*]Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

Jersey.  The evidence against them, the majority of which is not relevant to this appeal, comprised (1) testimony of cooperating co-conspirators, (2) intercepted cellular telephone conversations, (3) a conversation recorded by a confidential informant (CI), (4) seizures of narcotics during traffic stops and the execution of search and arrest warrants, (5) Crafton's confession, and (6) expert testimony interpreting code used in telephone conversations.[1]

On August 1, 2008, a federal grand jury sitting in Newark, New Jersey, indicted Crafton, Stewart, and two other co-conspirators.  The indictment charged Crafton and Stewart with conspiring to distribute, and to possess with intent to distribute, one kilogram or more of heroin and five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A), and 846.  The indictment also charged Stewart with possessing with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a) and (b)(1)(B).  Crafton and Stewart proceeded to trial.[2]

On March 19, 2009, after an eight-day trial, the jury returned a guilty verdict on all counts.  Thereafter, the District Court sentenced Crafton to 360 months of imprisonment and ten years of supervised release and Stewart to two concurrent terms of 360 months of imprisonment and ten years of supervised release, and issued Stewart a $30,000 fine.

Crafton and Stewart each timely appealed, and this Court consolidated the appeals.

---

[1] The facts pertaining to this appeal will be discussed sequentially below.

[2] The other two co-conspirators pled guilty.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. §3742(a).  We review a district court's denial of a motion to suppress for clear error as to the underlying facts, but exercise plenary review over the court's legal determinations.  *United States v. Shields*, 458 F.3d 269, 275-76 (3d Cir. 2006).  The same standard applies to claims of outrageous government conduct.  *United States v. Hoffecker*, 530 F.3d 137, 153 (3d Cir. 2008).  We review criminal sentences and district court rulings on contemporaneous objections for an abuse of discretion.  *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc); *United States v. Lore*, 430 F.3d 190, 210 (3d Cir. 2005).

## III.

Crafton and Stewart together raise four discrete issues on appeal.  First, both Crafton and Stewart contend that the District Court erred in denying the defendants' motion to suppress wiretap evidence based on a false statement contained in the warrant affidavit.  Second, Crafton and Stewart allege that they were denied a fair trial because the prosecutor commented on the defendants' ability to present evidence during the prosecutor's closing arguments.  Third, Stewart claims that outrageous government conduct violated his due process rights.  Fourth and finally, Crafton argues that his sentence is both procedurally and substantively unreasonable.  We will address each contention in turn.

**A. Motion to Suppress**

On November 15, 2007, Special Agent Timothy Carey of the Department of Homeland Security, Immigration and Customs Enforcement, submitted a thirty-page affidavit in support of a warrant to intercept telephone calls made to and from Crafton's cellular telephone. In the affidavit, Special Agent Carey stated that he learned, based on a recorded conversation between the CI and Crafton and the observation of Crafton's whereabouts, that Crafton needed to get his "drug press" back from the home of his associate, Rasheed Tillett. Special Agent Carey also stated that law enforcement had recovered the drug press, along with other drug paraphernalia, from the Tillett residence after Tillett's murder. Finding that there was probable cause that Crafton, Stewart, and others were engaged in illicit narcotics dealing through the use of Crafton's cellular telephone, a judge of the United States District Court for the District of New Jersey issued a wiretap warrant.

Prior to trial, Crafton filed a motion, in which Stewart joined, to suppress all intercepted cellular telephone conversations because, contrary to Carey's affidavit, law enforcement did not recover a drug press from the Tillett residence. At the suppression hearing, Special Agent Carey admitted that he had made a mistake in the affidavit by assuming without checking that the drug press was recovered from the Tillett residence based on conversations between the CI and Crafton and law enforcement's observation of Crafton's whereabouts. The District Court denied the motion to suppress from the bench:

"this misrepresentation was not a substantial basis upon which the warrant was granted." (App. at A124.) On appeal, Crafton and Stewart contend that this decision was in error.

We have stated that,

"[w]here a defendant demonstrates by a preponderance of the evidence 'that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause,' the Fourth Amendment requires that 'the fruits of the search' be excluded 'to the same extent as if probable cause was lacking on the face of the affidavit.'"

*Shields*, 458 F.3d at 276 (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). In other words, "in order to secure suppression of the fruits of the search, a defendant must show both that bad faith or reckless disregard existed on the part of the affiant, and that there would have been no probable cause but for the incorrect statement." *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993).

We will affirm the District Court's denial of the suppression motion. The defendants provided no evidence that Special Agent Carey made the false statement knowingly or recklessly. More importantly, the omission of the statement does not negate the existence of probable cause: The lengthy affidavit contained a plethora of evidence indicating drug trafficking activity apart from the statements regarding the drug press. Furthermore, even if law enforcement did not ultimately recover the drug press from the Tillett residence, Crafton's statement to the CI that the drug press was there and law

6

enforcement's observation of Crafton driving to the Tillett residence to recover the drug press still indicate that Crafton was engaged in illicit narcotics dealing.

### B. Prosecutorial Misconduct

During closing arguments, Crafton's counsel argued that the Government "cherry-picked" which wiretapped conversations to enter into evidence, omitting conversations that could have created reasonable doubt. In response, the prosecutor noted during his closing arguments that Crafton could have introduced any such exculpatory conversations himself:

> "Let me be clear about this. Defendants have no burden whatsoever to present a case, to testify, to present any evidence at all. Okay? But they can. And if they wanted to bring in other calls, they could. They have no obligation, can't hold it against them, but they could."

(App. at A1186.) Crafton's counsel objected, but the District Court overruled. Based on this ruling, Crafton and Stewart allege on appeal that they were denied their right to a fair trial.

"To find that the court abused its discretion in failing to order a mistrial for prosecutorial misconduct, we must first be convinced that the prosecution did in fact misconduct itself." *United States v. Rivas*, 493 F.3d 131, 139 (3d Cir. 2007). Although a prosecutor cannot suggest that the defendant has the burden to produce evidence, *see United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996), a prosecutor may "'focus the jury's attention on holes in the defense's theory,'" *Lore*, 430 F.3d at 213 (quoting *Balter*, 91 F.3d at 441).

7

We find no misconduct here. The prosecutor did not suggest to the jury that the defendants had the burden to produce evidence. Rather, the prosecutor merely responded to the defendants' misleading argument that the prosecutor intentionally failed to present exculpatory recordings, while reiterating, in the same breath, that defendants do not bear the burden of producing evidence. This response was permissible. *See*, *e.g.*, *United States v. Jones*, 188 F.3d 773, 779 (7th Cir. 1999) (holding that there was no prosecutorial misconduct when a prosecutor commented that the defense could have called an expert witness in response to the defense's claim that an expert witness would have disproved the government's witness testimony).

### C. Outrageous Government Conduct

The CI delivered the final shipment of heroin to Stewart's residence before Stewart's arrest. During pre-trial discovery, the Government disclosed that it had since paid the CI $20,000 in cash for relocation expenses due to threats made on the CI's life. Thereafter, at trial, Special Agent Carey indicated during cross-examination that the Government had made additional payments to the CI that predate this case. (*See* App. at 425-27.)

On appeal, Stewart claims that these facts amount to outrageous government conduct violating his due process rights. More specifically, Stewart asserts that "the government agents knew that the CI was going to go to the home of Mr. Stewart and plant drugs in his home unbeknown to him," (Stewart Br. at 10), and that the Government

8

inappropriately paid the CI $40,000 in exchange for the CI providing information for Stewart's prosecution.

This claim is waived. Motions "alleging a defect in instituting the prosecution," including the defense of outrageous government conduct, must be raised before trial. Fed. R. Crim. P. 12(b)(3)(A); *United States v. Pitt*, 193 F.3d 751, 760 (3d Cir. 1999). In order to obtain relief from waiver, the defendant must show "good cause." Fed. R. Crim. P. 12(e). Here, Stewart has failed to do so, as he has provided absolutely no explanation for his failure to raise the outrageous government conduct issue with the District Court. *See United States v. Rose*, 538 F.3d 175, 184-85 (3d Cir. 2008) (holding that the defendant did not show "good cause" because the defendant did not present "any colorable explanation" as to why he had failed to raise his suppression argument until appeal).

Even if the outrageous government conduct claim were properly before us, the claim would fail on the merits. We have stated that we are "'extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause.'" *Hoffecker*, 530 F.3d at 154 (quoting *United States v. Voigt*, 89 F.3d 1050, 1065 (3d Cir. 1996)). Accordingly, an indictment should be dismissed only if the government conduct is "most intolerable," and not "each time the government acts deceptively." *Id.* (quotations and citations omitted). Here, Stewart's assertion that the CI planted drugs in Stewart's home is without support, and the record indicates that the only payment the CI

9

received with regard to the instant case was $20,000 for relocation expenses.  This is not intolerable conduct rising to the level of a due process violation.

### D.  Sentencing

The District Court sentenced Crafton to 360 months of imprisonment, followed by ten years of supervised release.  This sentence was within the Guidelines range of 360 months to life in prison, which was based on Crafton's final offense level of 37 and criminal history category of VI.  On appeal, Crafton argues that his sentence is both procedurally and substantively unreasonable.

As Crafton's arguments reflect, we review sentences under an abuse of discretion standard in two stages.  *Tomko*, 562 F.3d at 567.  First, we must

> "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range."

*Gall v. United States*, 552 U.S. 38, 51 (2007).  If the procedure is sound, we then consider the sentence's substantive reasonableness based on a totality of the circumstances.  *Tomko*, 562 F.3d at 567.  Our standard of review in this second step is highly deferential: "we will affirm [the sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568.  "At both stages of our review, the party challenging the sentence has the burden of demonstrating unreasonableness."  *Id.* at 567.

Crafton contends that his sentence is procedurally unreasonable because the District Court failed to address his alleged diminished mental capacity within its consideration of the 18 U.S.C. § 3553(a) factors. This argument is belied by the record, which demonstrates that the Court did address Crafton's alleged diminished capacity but declined to grant a variance:

> "Clearly you probably have more challenges than some and fewer challenges than others, but they do not rise to a level of warranting any type of variance or downward departure for diminished capacity, so I cannot grant any variance or departure on that basis."

(App. at A1266.) As such, we cannot find that Crafton's sentence is procedurally unreasonable.

Crafton's substantive argument is also without merit. Crafton asserts that his sentence was "greater than necessary," 18 U.S.C. § 3553(a), because the District Court did not explain why the statutory mandatory minimum of twenty years of imprisonment was insufficient. This brief argument – which sounds procedural rather than substantive – is unpersuasive. The District Court took into account Crafton's criminal history, his status as a career offender, the seriousness of the offense, Crafton's sophistication, the need for deterrence, and the need to protect the public before imposing a sentence within the Guidelines range. Since Crafton has set forth no explanation as to why no reasonable sentencing court would have imposed such a sentence, he has not met his burden of demonstrating unreasonableness. *Tomko*, 562 F.3d at 567-68. Therefore, Crafton's substantive claim also fails.

11

## IV.

For the foregoing reasons, we will affirm the District Court's judgments of conviction and sentence.