**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT<br>JUDGE | May 25, 2021 | MARTIN LUTHER KING<br>COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

Blair R. Zwillman, Esq.
55 Madison Avenue, Suite 400
Morriston, New Jersey 07960
*Counsel for Defendant*

Sammi Malek, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

    **Re:**    *United States v. Keith Stewart*
           **Criminal Action No. 08-00346 (SDW)**

Counsel:

Before this Court is Defendant Keith Stewart's ("Defendant") Motion for Compassionate Release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 195; D.E. 202.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion without prejudice.

## DISCUSSION

A.

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010), *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). Accordingly, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. First, "a defendant seeking a reduced sentence must ask the BOP to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

B.

Defendant is a 48-year-old man who suffers from obesity, among other conditions. (D.E. 205 at 1; D.E. 130 at 3.) On March 19, 2009, Defendant was convicted of conspiracy to distribute heroin and cocaine and possession of heroin with intent to distribute. (D.E. 205 at 1.) Because Defendant "qualified as a career offender" with an "offense level of 37," he faced a term of 360 months to life. (*Id*. at 4 (noting that Defendant also faced a mandatory minimum of 20 years).) At sentencing, this Court considered but rejected requests for a downward departure and sentenced Defendant to 370 months' imprisonment, followed by 10 years of supervised release. (*Id.* at 4-5; D.E. 130; D.E. 132 at 1-2.) Defendant appealed and, upon denial of that appeal, filed various additional motions requesting resentencing. (D.E. 205 at 5-6.) These subsequent motions were denied. (*Id.*) Defendant is currently serving his sentence at the Federal Correctional Institution at Fort Dix ("FCI Fort Dix") in New Jersey. (D.E. 202 at 1; BOP, Find An Inmate (May 19, 4:00 P.M.), www.bop.gov/inmateloc/.)

On August 6, 2020, Defendant filed a *pro se* motion requesting a reduction of sentence under the FSA. (D.E. 195.) There, Defendant argued that the Federal Correctional Institution at

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

Elkton ("FCI Elkton"), where he was being held at the time, was experiencing "some of the wors[t]" numbers of COVID-19 cases. (*Id.*) Defendant also described a subpar BOP response at FCI Elkton, listed various general facts about the virus, and asserted that he has been "rehabilitat[ed]" while in prison. (*Id.* at 5, 20, 22; *see also* D.E. 202 at 18-19.)

On December 5, 2020, Defendant's counsel filed a supplemental motion in support of compassionate release. (D.E. 202.) The supplemental motion acknowledged that Defendant has only served "2/5th" of his sentence and stated that Defendant has previously contracted and recovered from COVID-19. (*Id.* at 1-2.) Nonetheless, the motion argued that Defendant's obesity, high cholesterol, and arthritis merit his early release, in part due to the case rate at FCI Fort Dix, where Defendant had since been transferred. (*Id.* at 2-3, 7.) Defendant also argued that the Section 3553 factors merit his release, as his crimes were "non-violent," he is a father who would like to return to his children, and he "intends to marry on release." (*Id.* at 17.) Lastly, in a footnote that spans more than three pages ("Footnote 12"), Defendant's counsel cites to a slew of compassionate release cases. (*Id.* at 9 n. 12.)

On May 7, 2021, the Government opposed Defendant's motion, arguing that it is merely another reiteration of Defendant's prior requests for resentencing due to the alleged "harshness" of the original sentence. (D.E. 205 at 1-2.) The Government explained that Defendant's initial motion to the BOP largely relied on the length of his sentence as grounds for early release rather than explicitly relying on circumstances related to COVID-19. (*Id.* at 7.) For this reason, the Government disputes Defendant's assertion that he has properly exhausted his claims. (*Id.*) The Government also argues that Defendant's motion fails on the merits, because Defendant has "previously tested positive for," "recovered from," and "declined vaccination against COVID-19." (*Id.* at 2, 17-21.) Lastly, the Government asserts that the Section 3553(a) factors further weigh against Defendant's release. (*Id.* at 2.)

On May 17, 2021, Defendant replied. (D.E. 206.) Defendant argues that, as to exhaustion, his "motion has metamorphosized since its initial filing, into an application for reduction and/or release, in large part premised on the COVID-19 pandemic." (*Id.* at 1.) The reply then notes that, "since the filing of the Government's opposition," Defendant "has received his initial Moderna vaccination." (*Id.* at 2.) The reply also argues, *inter alia*, that this Court should consider the fact that Defendant's "co-defendant" has been "released to home confinement," (*id.* at 2), and other courts have deviated "from the career offender range" in assessing compassionate release motions, (*id.* at 3). Finally, Defendant reiterates that extraordinary and compelling reasons for early release exist in this case. (*Id.* at 3-4.)

C.

It is far from clear whether Defendant's initial motion to the BOP, which seems to have merely reiterated arguments related to the length of his sentence, qualifies as a compassionate release motion that could raise a claim in this Court after administrative exhaustion. *See Raia*, 954 F.3d at 597; (D.E. 206 at 1 (Defendant arguing that his motion has "metamorphosized" over time).) However, given Defendant's status as a pro se litigant at the time of his BOP filing,[2] and his

---

[2] This Court construes pro se motions liberally. *See Merritt v. Blaine,* 326 F.3d 157, 164 (3d Cir. 2003).

presentation of his motion as one for compassionate release, this Court will accept that the exhaustion requirement has been met and address the merits of Defendant's motion.

Defendant has not established that "compelling and extraordinary reasons" justify his release. *See Epstein*, 2020 WL 1808616 at *2. Defendant notes that, a few months ago, approved COVID-19 vaccines had not yet been "widely disseminated to the public and prisons." (D.E. 202 at 15.) This is no longer the case, and Defendant has now been offered a vaccine that provides a high level of protection against the virus. (*See* D.E. 206.) Although Defendant initially refused to accept the vaccine he was offered, Defendant has since changed his mind and begun the vaccination process. (*Id.*) Therefore, in addition to the likelihood that Defendant obtained some level of resistance to the virus from contracting COVID-19, he now also has the vaccine's protection.[3] Thus, Defendant's susceptibility to renewed serious illness seems unlikely.

As for Defendant's medical conditions, the Centers for Disease Control and Prevention ("CDC") only recognize Defendant's obesity as a diagnosis that increases his likelihood of serious illness. *See* CDC, People With Certain Medical Conditions (May 20, 2021, 3:00 P.M.), http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Thus, even placing Defendant's vaccination status and COVID-19 history aside, it is not clear that Defendant's obesity amounts to an extraordinary and compelling reason for early release. *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (denying compassionate release where defendant suffered from hypertension and obesity, but medical records showed that the BOP was "adequately managing [his] medical care"); *United States v. Wall*, Crim. No. 16-533, 2021 WL 822803, at *4 (D.N.J. Mar. 4, 2021) (denying compassionate release and noting that "[t]he Court's decision finds ample support in this District, where there are numerous courts [that] have [] denied compassionate release for obese inmates who suffer from asthma"); *United States v. Grasha*, 2020 WL 5747829, at *5 (W.D. Pa. Sept. 24, 2020) (noting that obesity and BMI of 48 presented a serious risk but did "not arise to an extraordinary and compelling reason for release").

Additionally, although FCI Fort Dix did, at one point, have a high number of COVID-19 cases, the institution's vaccination efforts have caused that number to drop sharply. (*See* D.E. 205 at 10-11 (noting that over 50% of inmates are currently vaccinated, which is roughly the same as the general population).) In fact, there are currently zero active COVID-19 cases at FCI Fort Dix. (BOP, COVID-19 (May 18, 2021, 11:30 AM), https://www.bop.gov/coronavirus.) FCI Fort Dix's lack of active COVID-19 cases further weighs against reducing Defendant's sentence. Although Defendant suggests that he could be reinfected with COVID-19, or, hypothetically, be infected with "COVID-19 and the flu" "at the same time," these concerns are, to say the least, highly speculative. (*See* D.E. 205 at 25-26 (citing *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary

---

[3] In response to counsel's three-page Footnote 12, (D.E. 202), and arguments regarding any co-defendants' compassionate release, this Court notes that each compassionate release motion is considered individually, given the defendant's health circumstances, risk of disease, vaccination status, and any relevant context regarding the specific federal correctional institution where the individual is housed. In addition, this Court weighs the Section 3553(a) factors separately for each movant. For that reason, even to the extent that some of Footnote 12's cases align factually with Defendant's serious crimes and obesity, none seem to be within District or otherwise controlling in this case.

and compelling' for purposes of § 3582(c)(1)(A).")).) "[A] possibility that is unconfirmed by science is insufficient to create an extraordinary and compelling circumstance justifying [Defendant's] release." *See United States v. Purry*, 2020 WL 5909793, at *2 (D. Nev. Oct. 6, 2020).

Finally, Section 3553(a) acts as an independent bar to Defendant's motion. 18 U.S.C. § 3582(c)(1)(A). This Court must ensure that, should Defendant's sentence be reduced, the reduced sentence still reflects the seriousness of his offense. *See* 18 U.S.C. § 3553(a). While Defendant emphasizes that he has served "close to 13 years of his sentence," this is proportionally a small amount of his 30-year term. (D.E. 202 at 15-16.) Here, Defendant's conviction involved his central role in a sizeable drug distribution network. (*See* D.E. 205.) As explained by the Government:

> The offense for which [Defendant] was convicted was extremely serious, and his aggravating role in the offense as one of the leaders of the [drug-trafficking organization] has already been highlighted by this Court. The history and characteristics of the defendant, including his designation as a career offender, remain the same, notwithstanding any post-conviction rehabilitation. The fact that the Court has repeatedly declined the opportunity to revisit the sentence imposed further demonstrates that it continues to believe the sentence was sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, properly punish the defendant's conduct, provide adequate deterrence, both specific and general, and to protect the public from the very real risk that the defendant, who has a demonstrated history of engaging in serious drug trafficking, will reoffend.

(D.E. 205 at 28-29.) As a result, Defendant's arguments regarding the nonviolence of his offenses are overshadowed by the seriousness of his crime, his prior recidivism, and the scope of his drug dealing. *See United States v. Terry*, Crim. No. 16-210, 2020 WL 3264086, at *4–5 (D.N.J. June 17, 2020). For crimes such as Defendant's, "[p]unishment, a just sentence, respect for the law, and deterrence of others all require a lengthy term of imprisonment." *Id.*

Considering the seriousness of Defendant's crime, reducing his sentence would not be compatible with Section 3553(a). Because Defendant is adequately protected from the COVID-19 virus and has not presented additional circumstances that otherwise compel a sentence reduction, his motion must be denied.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**. An appropriate order follows.

             ___/s/ Susan D. Wigenton_____
             **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk

cc: Parties